**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**LARRY OMAR COLLIER**                                            **PETITIONER**

**VERSUS**                                    **CIVIL ACTION NO. 3:17CV27 HTW-LRA**

**SUPERINTENDENT RONALD KING**                            **RESPONDENT**

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Larry Collier was convicted in the Circuit Court of Rankin County, Mississippi, and seeks federal habeas relief under 28 U.S.C. § 2254. After a review of the entire record, the undersigned recommends that his petition be dismissed with prejudice.

**Factual and Procedural Background**

In 2013, Collier was convicted on three counts of selling cocaine based, in part, on the testimony of confidential informant and habitual offender, Shirley Melvin. He was sentenced as a subsequent drug offender to serve consecutive 40-year terms on each count in the custody of the Mississippi Department of Corrections ("MDOC"), with only one day to be served on the last count, for a total of 80 years. The relevant facts are described in the state court's opinion as follows:

> A Rankin County grand jury indicted Larry Collier on four counts of selling cocaine, and as a subsequent drug offender. At trial, Rankin County Investigator Barry Vaughn testified that Shirley Melvin, a confidential informant and the State's star witness, decided to go undercover for the Rankin County Sheriff's Department after she was arrested for selling cocaine. Vaughn had agreed to let Melvin "work off her charges" so she could avoid going back to jail. While working off her charges, Melvin set up several drug buys with Collier under Vaughn's supervision.

Before allowing Melvin to buy drugs from Collier, Vaughn gave Melvin money, searched her clothing, outfitted her with audio and video surveillance equipment to record the transactions, and then searched her car's interior. Vaughn conceded on cross-examination that Melvin could have hidden cocaine in places on her body or in her car that were never searched, and that the sheriff's office did not have drug-sniffing dogs, so Melvin could have hidden drugs in her car that might not have been discovered.

As soon as Melvin took the stand, the State questioned her about her past, including her prior convictions. When the State asked her what her prior convictions were, and how many prior convictions she had, she replied that she had prior convictions for "forgery and sales." When specifically asked how many forgery convictions she had, Melvin said she had five forgery convictions dating back to 2001, which she characterized as being for "bad checks." And when asked if she had another felony conviction, Melvin said she had a felony conviction sometime around 2000 for selling crack cocaine. Finally, Melvin told the jury that she was again arrested for selling crack cocaine in 2010—the arrest that had inspired her to work as a confidential informant.

Melvin then testified that she had bought drugs from Collier on three separate occasions: May 11, July 13, and October 25, 2012. She testified that she would call Collier and ask him if he was doing any business. And if he was, Melvin would then go to Collier's trailer on Shady Lane. Once a deal was set up, Melvin would go to the Rankin County Sheriff's Department and meet with Investigator Vaughn. Melvin explained that, before she left for a sale, the sheriff's department officers would search her clothing, wire her with audio and visual equipment, and search her car.

According to Melvin, the actual transactions were quick affairs. She would drive to Collier's trailer in her car, get out, go in, buy crack cocaine, give Collier money, get back in her car, and then leave. Melvin always returned after a buy to the sheriff's department, where she would give Vaughn the drugs she had just purchased from Collier. Sheriff's department officers also would search Melvin again for good measure.

During Melvin's direct testimony, the State introduced the video recordings into evidence. The parties agreed to begin playing the video "approximately a minute before" Melvin arrived at Collier's trailer and stop the video once she left.

In the video showing the May 11 meeting, Melvin arrived at Collier's trailer and went inside the front room, where a transaction of some kind appeared to take place. Collier could be seen holding a small bag that he appeared to give Melvin. Melvin then left. Likewise, in the video showing the July 13 transaction, Melvin arrived at and entered Collier's trailer where Collier again appeared to hand something to Melvin. In the video depicting the October 25 transaction, Melvin drove up to Collier's trailer but did not go inside. Collier and Melvin instead met in the yard, and Melvin could be seen counting out ten-dollar bills and handing them to Collier. Collier then handed something to Melvin.

On cross-examination, the defense attempted to impeach Melvin for her failure to disclose three other convictions: a 1975 grand-larceny conviction and two other 1977 forgery convictions. The State objected, and, outside the hearing of the jury, argued that Mississippi Rule of Evidence 609 and this Court's decision in *Johnson v. State* precluded the defense from impeaching Melvin with prior convictions older than ten years, and that, in any event, the defense was barred from impeaching with the prior convictions for failure to provide the State with advanced written notice as required by Rule 609.

Collier argued that he wanted to question Melvin about her prior convictions so he could impeach her testimony and show she had lied, and that Melvin had "opened the door to [impeachment with her prior convictions] by not providing the jury with her full record." The defense also wanted to introduce into evidence Melvin's "guilty-plea petitions" from other convictions in which she also had failed to disclose her entire criminal record.

Before making his ruling, the judge questioned Melvin about the convictions she had omitted during her direct examination. Melvin claimed she did not remember what she had been convicted of during the 1970s or when she was actually convicted, and that she "thought it was in the early "[']80s, but [the defense attorney said] it was in ′75," and that she did not remember."

The trial judge ultimately prohibited Collier from asking about Melvin's other convictions based on Rule 609(b)'s requirement that a party provide advanced written notice if seeking to impeach a witness with a conviction more than ten years old. In making his ruling, the trial judge analyzed the issue as follows:

> Now, Mr. Harris [Collier's attorney], you want to come around [Rule 609's requirements] by arguing that, because [Melvin] didn't answer in a way that you believe was truthful, you ought to, because of that, now be able to impeach that answer given during the course of her testimony. And that under that situation, 609, the timeline relative to 609(b) is not applicable. I don't see any authority that provides that. And I don't have to do a balancing test if it were applicable, because it's a crime of falsity. But I do believe that at some point, it becomes cumulative in nature in the sense of, you know, whether she's had five convictions or seven convictions, I'm not sure is that—is that probative on the issues before the jury. She's admitted that she has five forgery convictions, has she not?
> ...
>
> But I guess what I'm saying is, is that even if you missed giving the notice, it appears that the rule requires in [*Johnson ] v. State*, 529 So.2d 577, requires that testimony, I believe, of two or three more convictions now seems like it's two more convictions would be cumulative, and therefore not probative on the issues before the [c]ourt. She's been impeached with five or six convictions, and I don't think one or two more really is going to make much difference, so the State's objection will be sustained.
>
> However, the trial judge did allow the defense to "develop the testimony that [Melvin's forgeries] [we]re not just false pretense, bad-check type forgeries."

When court resumed, the defense hammered Melvin about her forgery convictions and how the forgeries had involved more than just writing bad checks. The defense pointed out that Melvin's forgery convictions had involved "forging someone else's name to an instrument like a blank check...." The defense also pointed out that Melvin had been facing habitual-offender status when she had agreed to work off her charges. However, the defense was not allowed to impeach Melvin about the other three 1970s-era convictions she had failed to disclose during direct examination or admit the guilty-plea petitions in evidence.

Following Melvin's testimony, the State called two expert witnesses from the Mississippi Crime Laboratory who both testified that the substance Collier allegedly sold was cocaine. The State then rested its case. After making an unsuccessful motion to dismiss, the defense also rested its case.

*Collier v. State*, 183 So.3d 885-89 (Miss. 2016).

Collier was found guilty on three counts, and raised the following two issues on appeal (as stated in the petition):

1. The failure to disclose a prior conviction pursuant to M.R.E. 609(b) does not allow a party to blatantly lie to the jury on that issue without opening the door to cross-examination.

2. The verdict of guilty was against the overwhelming weight of the evidence introduced at trial, and thus, the jury showed bias and prejudice.[1]

Both arguments were rejected by the Mississippi Supreme Court on February 4, 2016. Aggrieved, Collier filed a motion for post-conviction relief on June 5, 2016, asserting ineffective assistance of counsel on three grounds: (a) failure to object to the confidential informant's inadmissible testimony; (b) failure to request an impeachment instruction; and, (c) failure to challenge venue. The Mississippi Supreme Court denied the motion on October 26, 2016, and a subsequent post-conviction motion seeking a reduction in sentence, on September 13, 2017.[2]

Collier now brings the instant petition, and asserts as grounds for relief, the same evidentiary and ineffective-assistance-of-counsel claims rejected on direct appeal and post-conviction review.

---

[1] ECF No. 26.

[2] ECF No. 13-2; 12-1.

5

## Discussion

This Court's review of Petitioner's claims for federal habeas relief is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. Under the Act, this Court cannot grant a petitioner federal habeas corpus relief for any claim that was adjudicated on the merits in a state court proceeding, unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under 28 U.S.C. § 2254(d)(1), this court reviews questions of law as well as mixed questions of law and fact, while questions of fact are reviewed under 28 U.S.C. § 2254(d)(2).

Under the first prong, the clauses "contrary to" and "unreasonable application of" are independent bases for granting federal habeas relief. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision is "contrary to" federal law if it contradicts Supreme Court precedent or reaches a different result on materially indistinguishable facts. *Id.* Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685 694 (2002). The state court's decision must be objectively unreasonable, not merely erroneous or incorrect. *Wood v. Allen,* 558 U.S. 290, 301 (2010).

AEDPA's second prong requires that federal courts defer to a state court's factual determinations unless they are based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Morales v. Thaler*, 714 F.3d 295, 301 (5th Cir. 2013). Deference is critical because federal courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002); *Jasper v. Thaler*, 466 F. App'x 429, 435 (5th Cir. 2012). Thus, we presume the state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S. C. § 2254 (e)(1).

### 1. Confidential Informant claims

In ground one, Collier contends that he is entitled to federal habeas relief because the trial court prevented counsel from introducing Melvin's guilty plea petitions into evidence and limited the cross examination of her prior convictions after she failed to disclose them all on direct examination. The Mississippi Supreme Court rejected these arguments on direct appeal, and their related ineffective-assistance-of-counsel claims on post-conviction review.

As to the guilty plea petitions, the court explained that counsel's attempt to introduce them as prior inconsistent statements was premature because Melvin had yet to be cross examined about her inconsistent criminal history. It was also futile because she had "failed to disclose her prior convictions in the guilty-plea petitions, and the petitions would have been consistent with her untruthful testimony." *Collier*, 183 So.3d at 891.

7

As for limiting the scope of her cross examination under Rule 609, the appeals court found the error was harmless. While it agreed that Melvin opened the door to impeachment when she failed to disclose her other convictions on direct examination, it reasoned that the error was not prejudicial for several reasons: The jury had already been presented with evidence that Melvin was a "seasoned felon." *Collier,* 183 So.3d at 892. Counsel was permitted to show that her convictions for bad checks were in fact, forgeries. And, Melvin's testimony was not the only evidence of Collier's guilt. The court explained:

> [T]he three videos in this case clearly show that Collier exchanged packages of some substance for money. Melvin brought the substances to law-enforcement officials, and the substances tested positive for controlled substances. To question Melvin's testimony, one would have to believe that Collier sold Melvin something other than the controlled substances, and that Melvin then hid or destroyed what she bought from Collier and then retrieved hidden drugs to provide to police. Collier produced no evidence to support this speculation.
>
> Because Melvin's credibility already had been tarnished, and because of the substantial evidence that established the three transactions as drug sales, and in the absence of any evidence to the contrary, we fail to see how the disclosure of three more convictions would have made any difference. Therefore, under the facts of this case, we find that the trial judge's decision to prevent Collier's attorney from cross-examining Melvin on the other three convictions was harmless.

*Id.* at 892–93.

For purposes of federal review, the issue "is not whether the state courts' determination of harmlessness was incorrect, but whether the harmlessness decision itself was unreasonable." *Walton v. Banks*, 557 F. App'x. 254, 257 (5th Cir. 2014). Mississippi appellate courts are "free to police their own evidentiary rules." *Pemberton v. Collins*,

8

991 F.2d 1218, 1224 (5th Cir. 1993). "We do not sit as a 'super' state supreme court." *Smith v. McCotter*, 786 F. 2d 697, 700 (5th Cir. 1986). To warrant federal relief, a state court's evidentiary rulings must "run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Allen v. Vannoy*, 659 F. App'x 792, 800 (5th Cir. 2016) (quoting *Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir. 1999)).

In this regard, Collier frames the limitation of Melvin's cross examination not only as an evidentiary error, but as a denial of his Sixth Amendment right to confront his accuser. The law is well-settled that while the trial court has the discretion to "impose reasonable limits on defense counsel's inquiry, 'that discretionary authority comes about only after sufficient cross examination has been granted to satisfy the Sixth Amendment.'" *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000) (citation and internal quotation marks omitted). That is, "defense counsel should be permitted to expose to the jury facts relative to a witness' possible motivation to testify favorably for the prosecution or his potential bias for or against any party to the criminal proceeding." *Id.* However, the right to confrontation is not unlimited. To prevail on a Confrontation Clause claim, Collier must show that the limitation of Melvin's cross examination "had a substantial . . . effect . . . in determining the jury's verdict." *Barnes v. Vannoy*, 697 F.App'x. 799, 806 (5th Cir. 2017) (quoting *Burbank v. Cain*, 535 F.3d 350, 358 (5th Cir. 2008)). He has not met this high burden here.

Although counsel was not permitted to impeach Melvin about her other prior convictions, he was allowed to impeach her about her bad check convictions and expose her motivations for testifying. *Burbank*, 535 F.3d at 357. And, while Melvin was a

9

crucial witness in the prosecution's case, her testimony was not the only evidence of Collier selling cocaine. *Contrast Wilkerson*, 233 F.3d at 892 (finding Confrontation Clause violation when the testimony of the witness to be impeached was the only evidence that petitioner committed the murder); *Burbank*, 535 F.3d at 358–59 (finding the same).

As to the guilty-plea petitions, Collier is merely contending, as he did in state court, that the evidence was wrongly excluded. However, to merit habeas relief due to an admissibility error, Collier must still show there was actual prejudice. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). For the reasons already stated, he cannot make this showing.

Even without the guilty-plea petitions, the jury had an opportunity to ascertain Melvin's credibility and her motives for testifying. *United States v. Wilson*, 408 F. App'x 798, 804 (5th Cir. 2010). They were made aware of the fact that Melvin had not only five prior convictions, but had mischaracterized her forgery convictions, as nothing more than "bad checks." Given the other evidence presented at trial, Collier does not show that their impression of her credibility would have been substantially altered had they learned she had three more convictions.

The state court's determination of this claim was not in conflict with clearly established federal law, nor was it based on an unreasonable application of the facts in light of the evidence.

10

## 2. Weight of the Evidence

In ground two, Collier asserts that habeas relief is warranted because the jury's verdict was against the overwhelming weight of the evidence. Unlike a sufficiency-of-the-evidence claim, a weight-of-the-evidence claim requires an assessment of the credibility of the evidence presented at trial. *Tibbs v. Florida*, 457 U.S. 31, 37-38 (1982). It is purely a matter of state law and is not cognizable on habeas review. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence . . ."). "The credibility of the witnesses and the weight of the evidence is the exclusive province of the jury." *Hebert v. Rogers*, 890 F.3d 213, 225 (5th Cir. 2018) (citation omitted). Collier's request for relief on this basis should therefore be denied.

Even if the court were to construe this claim as challenging the sufficiency-of-the-evidence, Collier offers nothing to overcome the deference afforded to the Mississippi Supreme Court's findings that the weight and sufficiency of the evidence support a conviction in this case. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (relevant question in assessing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). The evidence, when viewed in the light most favorable to the verdict, establishes that "Melvin's testimony, along with the recordings—as unclear as they were—*could* have been sufficient for a reasonable juror to find Collier guilty of selling cocaine." *Collier*, 183 So.3d at 893 (emphasis in original). No relief is warranted on this claim.

### 3.  Ineffective Assistance of Counsel Claims

Next, Collier argues that counsel was ineffective on three grounds: (a) failing to object to the confidential informant's inadmissible testimony; (b) failing to request an impeachment instruction; and, (c) failing to object to venue.  The Mississippi Supreme Court found these claims were without merit on post-conviction review.  The Court finds no unreasonable application of *Strickland v. Washington*, 466 U.S. 688 (1984) or its progeny in this determination.

To establish a claim for ineffective assistance of counsel, a petitioner must show (1) "counsel's representation 'fell below an objective standard of reasonableness,'" and (2) "but for his counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008) (quoting *Strickland*, 466 U.S. at 688, 694).  It is not enough to establish a deficiency and resulting prejudice, however. *United States v. Lewis*, 786 F.2d 1278, 1281 (5th Cir. 1986).  To warrant federal habeas corpus relief, Collier must demonstrate that the Mississippi Supreme Court's adjudication of his ineffective assistance of counsel claim was an unreasonable application of *Strickland*.   Under the limited of scope of AEDPA review, even if this Court found the Mississippi Supreme Court's application of *Strickland* was incorrect, we could not recommend granting habeas relief unless we found that court's application of *Strickland* to be objectively unreasonable or an actual misapplication of the law.  "[S]urmounting *Strickland*'s high bar is never an easy task" and [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Vasquez v. Thaler,* 505 F.

App'x 319, 326 (5th Cir. 2013) (quoting *Premo v. Moore*, 562 U.S. 115, 122 (2011) (internal quotation marks and citations omitted)).

### A.  Failure to object to the admissibility of the confidential informant's testimony.

The crux of Collier's first claim is that counsel was ineffective for failing to challenge the State's use of Melvin as a confidential informant. Specifically, Collier maintains that state law prohibits agencies from using parolees as confidential informants without the prior approval of the MDOC Commissioner. He suggests that there was a "strong possibility" that Melvin was not pre-approved, but in fact, prohibited by MDOC and the state parole board from serving as an informant. He criticizes counsel for failing to investigate Melvin's qualifications prior to trial, and for failing to question her about it on cross examination. According to Collier, had counsel filed a motion to suppress Melvin's testimony on this basis, the trial court would have been obligated to grant it.[3]

Whether Melvin met the pre-requisites for serving as a confidential informant under state law is not for this court to resolve. Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). That said, nothing of record indicates that approval was not obtained in this case as Collier, himself, recognizes in his traverse.[4] His contention that the trial court would have granted a motion to

---

[3] ECF No. 15, pp. 8-10.

[4] Collier cites Miss. Code Ann. § 41-29-110, which provides as follows:

> The Mississippi Bureau of Narcotics is hereby authorized and empowered to request and to accept the use of persons convicted of an offense, whether a felony or

13

suppress Melvin's testimony on these grounds is speculative, at best. *Koch v. Puckett*, 907 F.2d 521, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections"); *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (denying habeas relief on ineffective assistance of counsel claim because petitioner only offered conclusory allegations of deficient performance by counsel based on failure to investigate). Conclusory allegations and bald assertions are insufficient to support a petition for a writ of habeas corpus. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

Moreover, Melvin's testimony did not go unchallenged. Counsel fully developed, before the jury, that the "bad checks" Melvin described were, in fact, forgery convictions for "forging someone else's name to an instrument like a blank check. . . ." *Collier*, 183 So.3d 889. He also aggressively cross examined Melvin about her motivations for working with the police, highlighting the fact that Melvin was a habitual offender who had agreed to serve as a confidential informant to "work off her charges." In closing arguments, he argued the following:

> Let's go back. It's September of 2010, and that's the day that Shirley Melvin is busted by the Rankin County Sheriff's Department for selling cocaine. This time Shirley's a habitual offender, and she knows that. The State could easily have her spend the rest of her life in jail, and she knows

---

a misdemeanor, for work in support of the bureau. The bureau is authorized to enter into any agreements with the Department of Corrections, the State Parole Board, any criminal court of this state, and any other proper official regarding the working, guarding, safekeeping, clothing and subsistence of such persons performing work for the Mississippi Bureau of Narcotics. Such persons shall not be deemed agents, employees or involuntary servants of the bureau while performing such work or while going to and from work or other specified areas.

> that. But, wait, I don't know why on earth the [S]herriff's [D]epartment or whoever made the decision, would want to give a career criminal like Shirley Melvin a second chance, another chance, a break, but that's apparently what they did. Just bring us some rocks of cocaine, and your case will go away. It will vanish into thin air, and that's what happened to her case. She brought them some rocks of cocaine, and her case was dismissed.
>
> Now, what kind of person is Shirley Melvin? I mean, what kind of person serves six or seven years from 2002 to 2009, and upon being released on parole, does she show how she's been rehabilitated from the prison process? No, not Shirley Melvin. She goes right back in 2010 to selling cocaine. And they ask you to believe her that she got these rocks from Larry Collier. What kind of person is Shirley Melvin? Well, we know that she's been convicted of forgery, not once, not twice, not three times, not four times, by her admission, five times she's been convicted of forgery. That's who Shirley Melvin is. And she tried to pass it off as, oh, they're just bad checks. Folks, these aren't bad checks. Okay? Forgery is pretending you own a check, and you take that check and you cash it, but it doesn't belong to you. That's not a bad check to the pizza parlor; that's lying to whoever you passed that check to. Five times convicted of that, and that's who Shirley Melvin is. But if I hadn't have said something, she would have just let you believe these were bad checks. I had to stop her from misleading you, and she got up there on the witness stand, and she'd just sit there and lie to you about that. But, fortunately, I caught her at it, and she had to admit it. Okay?
>
> Her oath means nothing to her. That's who Shirley Melvin is.[5]
> . . .

Notwithstanding counsel's arguments, the jury found the evidence as a whole supported a guilty finding. The jury's credibility determination, inferences, and reasonable construction of the evidence are entitled to great deference. That the Mississippi Supreme Court found this ineffective-assistance-of-counsel claim to be without merit was not an unreasonable application or contrary to *Strickland*.

---

[5] ECF No. 14-3, pp. 58-60.

15

### B. Failure to request impeachment instruction.

Collier also alleges that counsel was ineffective in failing to request an "impeachment instruction," like the one proposed in *Ferrill v. State*, 643 So.2d 501, 504-05 (Miss. 1994), which read as follows:

> The Court instructs the jury that the testimony of a witness may be discredited or impeached by showing that on a prior occasion they have made a statement which is inconsistant [sic] or contradictory statement must involve a matter which is material to the issues in this case.
>
> A prior statement of the witness or witnesses can be considered by you only for the purpose of determining the weight or believeability [sic] that you give to the testimony of the witness or witnesses that made them. You may not consider the prior statements as proving the guilt or innocence of the accused.

The prudence of counsel requesting such an instruction is not entirely clear given Melvin's failure to disclose her prior convictions in the guilty-plea petitions. As noted on direct appeal, Melvin "failed to disclose her prior convictions in the guilty plea-petitions, [so] the petitions would have been consistent with her untruthful testimony." *Collier*, 183 So.3d at 891; *see also Gillet v. State*, 56 So. 3d 469 (Miss. 2010) (impeachment instruction did not apply where witness had not made any statements prior to trial that were inconsistent with her trial testimony).

But even if the failure to request an impeachment instruction fell below an objective standard of reasonableness, a claim of ineffective assistance of counsel does not succeed on deficiency of counsel alone. Petitioner must also prove that he was prejudiced, and that but for counsel's error, the proceedings would have been different. In making this assessment, "the question is not whether a court can be certain counsel's

16

performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently," but rather "whether it is reasonably likely the result would have been different." *Vasquez*, 505 F. App'x. at 325 (quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011)).

In the instant case, the jury received instructions on both the sufficiency of the evidence and reasonable doubt, in addition to the following:

> It is your prerogative to determine what weight and what credibility will be assigned the testimony and supporting evidence of each witness in this case. You are required and expected to use your good common sense and sound honest judgment in considering and weighing the testimony of each witness who has testified. You should not be influenced by bias, sympathy or prejudice. Your verdict should be based on the evidence and not upon speculation, guesswork or conjecture.[6]

Jurors are presumed to follow the court's instructions, and there is no basis for finding that they did not do so here. *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *see also Swann v. State*, 806 So.2d 1111, 1117 (Miss. 2002) (refusal of a proposed impeachment instruction would have been erroneous "if no other instructions regarding the believability of [the accomplice's] testimony were provided to the jury").

### C. Failure to challenge venue.

Collier also argues that counsel was ineffective in failing to challenge "the denial of [his] right to a jury to determine the essential jurisdiction element of venue beyond a reasonable doubt." However, the "[f]ailure to raise meritless objections is not ineffective

---

[6] ECF No. 14-1, p. 40.

17

lawyering; it is the very opposite." *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007). *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted). Collier has not shown that his attorney had any basis for challenging venue. The fact that the offenses occurred in Rankin County, Mississippi, as alleged in the indictment, was established at trial. The investigator testified that all three drug transactions occurred "in the city limits of Brandon, in Rankin County, Mississippi." [7]

Given the evidence against Collier and AEDPA's deferential standard of review, the state court's ruling that his ineffective assistance-of-counsel claims failed to satisfy both *Strickland* prongs was not an unreasonable application of clearly established federal law.

### 4. Reduction in 80-year sentence.

As an amended and final claim, Collier challenges the Mississippi Supreme Court's rejection of his request for a sentence reduction. At the time of his offense in 2012, the sentencing range for selling cocaine was up to 30 years, irrespective of the amount sold. Miss. Code Ann. § 41–29–139(b)(1) (2009). As a subsequent offender, Collier was also subject to a sentencing enhancement up to twice this term. Miss. Code Ann. § 41-29-147 (2011). In 2014, the Mississippi legislature amended § 41-29-139 to reflect a new sentencing structure based on the quantity of cocaine sold. *Rushing v. State*, 192 So.3d 1113, 1116 (Miss. Ct. App., 2016). Collier now argues that he is entitled to be

---

[7] ECF No. 1, p. 5; ECF No. 14-2, p. 105.

resentenced under the amended version because the statute was amended while his direct appeal was still pending. Because state law provides that offenders are to be sentenced under the statute in effect at the time of the offense, the Mississippi Supreme Court rejected this claim as lacking any "arguable basis" on post-conviction review. *Nations v. State*, 199 So.3d 1265, 1275 (Miss. Ct. App. 2016) (citing *Wilson v. State*, 194 So.3d 855,873 (Miss. 2016)).[8]

A petitioner is entitled to habeas corpus relief only if he can show that the sentence imposed "exceeds or is outside the statutory limits, or is wholly unauthorized by law." *Haynes v. Butler*, 825 F.2d 921, 923 (5th Cir. 1987). However, "[i]f a sentence is within the statutory limits, the petitioner must show that the sentencing decision was wholly devoid of discretion or amounted to an arbitrary or capricious abuse of discretion, or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty." *Id*. (internal citation and quotation marks omitted).

Collier has not made this showing here. He simply asserts, as he did in state court, that he was entitled to be resentenced under the 2014 amended version of Miss. Code Ann. § 41-29-139, which is insufficient to warrant habeas relief. The Mississippi Supreme Court's resolution of this issue was not contrary to, nor an unreasonable application of, clearly established federal law.

---

[8] ECF No. 26.

For these reasons, it is the recommendation of the undersigned United States Magistrate Judge that this habeas petition should be dismissed with prejudice.

### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED on February 5, 2020.

                                                  s/ Linda R. Anderson
                                      UNITED STATES MAGISTRATE JUDGE